850 F.2d 1524
 BORG-WARNER ACCEPTANCE CORPORATION, Plaintiff-Appellant,
v.
ALABAMA FURNITURE AND APPLIANCE, INC., Scott's Furniture
Warehouse Showroom, Inc., and Marshal L. Campbell,
Defendants-Appellees.
ALABAMA FURNITURE AND APPLIANCE, INC., and Scott's Furniture
Warehouse Showroom, Inc., Plaintiffs-Appellees,
v.
BORG-WARNER ACCEPTANCE CORPORATION, Defendant-Appellant,
R.J. Walker, Defendant.
 No. 87-7624.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 2, 1988.
As Modified on Grant of Rehearing Sept. 30, 1988.
 
 Cabaniss, Johnston, Gardner, Dumas & O'Neal, Benjamen T. Rowe, David L. Kane, Mobile, Ala., for plaintiff-appellant.
 David P. Broome, McDonough & Broome, Mobile, Ala., for Marshal L. Campbell.
 Stephen R. Windom, Sirote, Permutt, McDermott, Slepian, Friend, Friedman, Held & Apolinsky, Mobile, Ala., Bruce D. Brooke, Neely, Green, Fargarson & Brooke, Memphis, Tenn., for Scott's Furniture and Marshal Campbell.
 Appeal from the United States District Court for the Southern District of Alabama.
 Before HILL and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 HILL, Circuit Judge:
 
 
 1
 Appellees Alabama Furniture and Appliance, Inc. ("Alabama Furniture") and Scott's Furniture Warehouse Showroom, Inc. ("Scott") are furniture dealers wholly owned by appellee Marshal L. Campbell ("Campbell"). Campbell is or was president and chief executive officer of these companies; he also owns and runs International Wholesale Distributors, Inc. ("International"), a corporation engaged in the wholesale furniture business, and the Home Company ("Home"), a sole proprietorship which provided computer and accounting services to Scott and Alabama Furniture. Neither Home nor International is a party to this lawsuit. Appellant Borg-Warner Acceptance Corporation ("BWAC") formerly provided inventory and accounts receivable financing to Alabama Furniture and Scott in amounts up to approximately $5,000,000.
 
 
 2
 This case first came before the district court in September, 1985, when BWAC sued Alabama Furniture and Scott for amounts loaned by BWAC under a certain Loan and Security Agreement. The parties entered into a settlement agreement in August of 1986. However, the subsequent dealings between the parties did not work out as anticipated, at least from BWAC's point of view. In its present incarnation, this case came before the district court on the following motions:
 
 
 3
 1. Motion by Borg-Warner Acceptance Corporation to Enforce Judgment and Settlement Agreement;
 
 
 4
 2. Motion by Borg-Warner Acceptance Corporation for Sanctions Against Marshal L. Campbell;
 
 
 5
 3. Motions by Borg-Warner Acceptance Corporation Controverting Answers to Garnishments; and
 
 
 6
 4. Marshal L. Campbell's Motion to Enforce Settlement Agreement.
 
 
 7
 District Court Order of June 19, 1987, at 1-2. Campbell was not originally a party to the present lawsuit in his personal capacity, but was made a party "on February 3, 1987 for the singular purpose of enforcing the settlement agreement and judgment orders of [the district] Court." Id. at 4 n. 1. Both sides seek to enforce the settlement agreement entered into on August 11, 1986, which required that the keys to the Scott and Alabama Furniture locations be turned over to BWAC not later than 6:00 p.m. on August 12, 1986. The district court found that the keys were in fact surrendered as required. The agreement also provided that Campbell would convey title to certain real estate, which he held in his personal capacity, to BWAC.
 
 
 8
 The primary bone of contention is the portion of the settlement agreement which provides as follows:
 
 
 9
 3. Scott and Alabama shall surrender to BWAC custody of and the immediate right to possess the following items, effective at the time of the surrender of said keys:
 
 
 10
 a. All inventory, accounts, monies, existing and future proceeds, fixtures, equipment, vehicles, and books and records (as defined in Paragraph 3(5) of the Loan and security Agreement) of Scott, whether located on the Scott premises or elsewhere; provided, however, that any appliances as to which a third party has a perfected security interest superior to the security interest of BWAC shall be excluded but shall remain on the premises until properly claimed by such party. BWAC has been advised of the existence of an AmSouth lien on one of the Mercedes delivery trucks. On or before September 15, BWAC shall advise Campbell in writing whether it wishes to assume the lien indebtedness and retain such vehicle;
 
 
 11
 b. All inventory, accounts, monies, existing and future proceeds, fixtures, equipment, vehicles, books and records (as defined in Paragraph 3(5) of the Loan and Security Agreement) of Alabama, whether located on the Alabama premises or elsewhere; provided, however, that any appliances as to which a third party has a perfected security interest superior to the security interest of BWAC shall be excluded but shall remain on the premises until properly claimed by such party.
 
 
 12
 Id. at 2. Campbell, Scott and Alabama Furniture concede, at oral argument, that the judgment of the district court can be upheld only if appellees are assumed to have, in the last few days prior to August 12, 1986, transferred large quantities of inventory from the Scott locations to International. BWAC claims that there have been additional unexplained inventory shortages, and that large amounts of cash were improperly transferred to Home and to Campbell personally between April, 1984, when the indebtedness came into existence, and August 12, 1986. The parties do not agree whether the above-quoted paragraph 3 of the settlement agreement entitles BWAC to recover the allegedly missing property and money.
 
 
 13
 The district court essentially concluded that an accord and satisfaction had taken place, holding that[t]he settlement agreement, according to the plain meaning of the terminology contained therein, required that at 6:00 p.m. on August 12, 1986 the defendants turn over to BWAC those items specified (i.e., all the inventory, accounts, monies, existing and future proceeds, fixtures, equipment, vehicles and books and records) which were in the possession and control of the defendant corporations as of that time.
 
 
 14
 Id. at 6. The district court also noted that the transfer of Campbell's personal real estate was a factor supporting the conclusion that BWAC bargained for the right to receive only whatever money and inventory was left in the corporate premises at 6:00 p.m. on August 12, 1986. Id. at 7. That court rejected BWAC's argument that various transfers of inventory and money, which allegedly occurred outside the ordinary course of business prior to the surrender of the keys at 6:00 p.m. on August 12, 1986, should be treated as void under the Alabama Fraudulent Conveyance Act,[1] and should therefore be recoverable by BWAC. Having found that Campbell and his wife had fulfilled their obligations under the settlement agreement, the district court concluded that they were protected from claims for additional contribution by the release provided in that agreement. District Court Order of June 19, 1987, at 7.
 
 
 15
 The district court partially granted Campbell's motion to enforce the settlement agreement, so as to require delivery of documents of release, but denied that motion with respect to reimbursement of certain mortgage payments; it denied BWAC's motions to enforce the settlement agreement, for sanctions against Campbell, and controverting answers to garnishments. Id. at 8. We reverse the judgment of the district court and remand the case to the extent that it grants Campbell's motion to enforce the settlement agreement and denies BWAC's motion to enforce; otherwise, we affirm.
 
 
 16
 Our difficulty with the district court's decision is that we cannot agree with its construction of paragraph 3 of the settlement agreement. The agreement is not a model of clarity, as evidenced by the problems that have arisen in its interpretation. Nevertheless, we agree with BWAC that the broad language "whether located on the ... premises or elsewhere" entitles BWAC to recover any money or property to which title is held by Alabama Furniture or Scott, even though such money or property may have been physically removed from the premises. The remand is to allow the district court to determine what portion, if any, still belongs to Alabama Furniture or Scott of the money and property removed from the corporate locations. This finding was unnecessary under the district court's construction of the agreement which only gave BWAC whatever money and property was physically left on the premises at 6:00 p.m. on August 12, 1986. Of course, if the district court should determine that no money or property was improperly removed, or that title to all the transferred money or property has ceased to be in Alabama Furniture or Scott, the ultimate result would remain unchanged; BWAC's recovery would be limited to what it has already received, and the Campbells would be entitled to receive their release. However, should the district court find that money or property that still belonged to Alabama Furniture or Scott as of August 12 had been improperly transferred, BWAC will be entitled to such money or property, and the Campbells will not be entitled to the release until they comply fully with the terms of the settlement agreement by turning over to BWAC all property and money belonging to Alabama Furniture or Scott.
 
 
 17
 AFFIRMED in part, REVERSED in part, and REMANDED with instructions.
 
 
 
 [1]
 This statute provides that "[a]ll conveyances or assignments in writing, or otherwise, of any estate or interest in real or personal property ... made with intent to hinder, delay, or defraud creditors ... are void." Ala.Code Sec. 8-9-6 (1975)